NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2963
_____

UNITED STATES OF AMERICA

v.

HA NGO,
Appellant

(E.D. Pa. No. 2-07-cr-00662-006)
_____

No. 09-3309
_____

UNITED STATES OF AMERICA

v.

CHI CUONG HOANG,
Appellant

(E.D. Pa. No. 2-07-cr-00662-005)


_____

No. 09-3667
_____

UNITED STATES OF AMERICA

v.

NAM LY,
Appellant

(E.D. Pa. No. 2-07-cr-00662-009)

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Honorable Mary A. McLaughlin)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 7, 2011

Before:  SCIRICA, SMITH and JORDAN, *Circuit Judges.*

(Filed: November 17, 2011)
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Following a jury trial, three co-conspirators appeal their convictions for distributing illegal drugs.  Nam Ly was convicted of conspiracy to distribute less than 50 marijuana plants and less than 50 kilograms of marijuana and sentenced to 41 months' imprisonment, two years of supervised release, a $500 fine, and a $100 special assessment.  At the same trial, Ha Ngo was convicted of conspiracy to distribute 1,000 or more marijuana plants and 100 kilograms or more of marijuana, distribution of 1,000 or more marijuana plants and 100 kilograms or more of marijuana, and using and maintaining a storage facility for the purpose of distributing marijuana.  Ngo was sentenced to 120 months' imprisonment, five years of supervised release, a $1,500 fine, and a $300 special assessment.  Chi Cuong Hoang was convicted of conspiracy to distribute 500 grams or more of MDMA (ecstasy), and one count of using and maintaining a storage facility for the purpose of distributing marijuana.  Hoang was

2

sentenced to 240 months' imprisonment, ten years of supervised release, a $1,000 fine, and a $200 special assessment.

Ly raises four challenges: the sufficiency of the evidence underlying his conspiracy conviction; a "material variance" between the evidence and indictment prejudicing his substantial rights; erroneous denial of his motion to suppress evidence; and imposition of an unreasonable sentence.

Ha Ngo challenges the sufficiency of the evidence for his conspiracy conviction, the underlying possession of marijuana conviction, and the maintaining a storage facility for distribution of marijuana conviction.

Chi Cuong Hoang contends the court erred in denying his motion to suppress wiretap evidence as the Attorney General Order authorizing the intercept expired and the jury instructions failed to fully set out the elements of conspiracy to distribute MDMA.

We will affirm in all respects.[1]

I

This case is part of a large Immigration and Customs Enforcement (ICE) investigation into drug trafficking between Canada and the United States. Son Ngo was the target of an ICE investigation as the organizer of "the Company" which imported, produced, and distributed substantial amounts of MDMA (ecstasy) pills, methamphetamine, and marijuana. Son Ngo negotiated the purchase of large amounts of ecstasy pills laced with methamphetamine from Canadian and other wholesale

---

[1] The District Court exercised subject-matter jurisdiction under 18 U.S.C. §3231. We have jurisdiction under 28 U.S.C. §1291 and 18 U.S.C. §3742(a).

distributors for distribution by his co-conspirators, including Chi Cuong Hoang. Son Ngo coordinated meetings to pick up and deliver marijuana produced by such co-conspirators as Ha Ngo and Nam Ly.

Beginning in May 2007 and continuing through September 2007, ICE monitored a court-ordered wiretap of thirteen target telephones. The recorded conversations led agents to locations in Reading, Pennsylvania, where they observed various meetings among co-conspirators. The agents observed one of the members, Khanh Bui, travel to Reading from Philadelphia. On certain occasions, Bui would park in a mall parking lot where a co-conspirator would arrive, drive the car to a separate location to pack the trunk with boxes, and return it to Bui at the mall. On another occasion, Bui traveled to Ha Ngo's house to pick up "merchandise." After picking up the packages, Bui would drive it back to Philadelphia. Upon his return, agents observed co-conspirators retrieve the boxes from Bui's car. At trial, Bui testified the boxes contained marijuana.

On a separate occasion in August of 2007, agents observed Nam Ly at "the Company's" headquarters in Philadelphia meeting with Son Ngo and again at a restaurant meeting with Son Ngo and two other known conspirators. Based on their observations and review of intercepted telephone conversations, agents concluded Ly was there to pick up cash. The ICE agents arranged for the Pennsylvania State Police to stop Nam Ly on the Pennsylvania Turnpike. After obtaining consent, the Pennsylvania State Trooper searched Ly's car and seized over $55,000 in cash.

"The Company's" business also included the selling of MDMA or ecstasy pills. On one occasion, Son Ngo had 10,000 pills that he distributed among various dealers.

4

When one of the dealers wanted to return 6,000 pills to Son Ngo, Chi Cuong Hoang facilitated the return by making arrangements with other distributors.

As a result of the investigation and information learned from intercepted conversations, ICE agents received and executed search and arrest warrants for a number of defendants. On September 25, 2007, agents found 393 marijuana plants, grow equipment, and written directions on how to grow marijuana at a home titled in Ha Ngo's name. Ha Ngo was arrested at Penn Nails in Sinking Spring, where agents found $3,159 in cash. Chi Cuong Hoang was arrested on September 25, 2007 at "the Company's" Philadelphia headquarters, where agents found 100.7 grams of marijuana, 1,176.3 grams of Ketamine, and $29,431 in cash in the house and 50,000 ecstasy pills in a car. Nam Ly surrendered himself to police on November, 1, 2007.

## II

## A

Nam Ly contends the evidence was insufficient to establish he was a member of "the Company's" marijuana distribution conspiracy because the government failed to prove he provided logistical support to the alleged conspiracy, and he was "involved" only in a minimal number of transactions over a short time period.

With respect to the conspiracy conviction, "we must determine if the evidence at trial would have allowed a reasonable juror to conclude beyond a reasonable doubt that the defendants 'shared a unity of purpose, [or] the intent to achieve a common goal and an agreement to work together toward the goal.'" *United States v. Applewhaite,* 195 F.3d 679, 684 (3d Cir. 1999) (quoting *United States v. Wexler,* 838 F.2d 88, 90–91 (3d Cir.

5

1988)) (alteration in original). The government may prove these elements entirely by circumstantial evidence. *United States v. Gibbs,* 190 F.3d 188, 197 (3d Cir. 1999).

The evidence plainly showed Ly was part of a conspiracy to distribute marijuana. The government presented testimony to establish Ly played an essential role in "the Company's" business. He was present at the headquarters in June 2007, and met with runners on several occasions in Pittsburgh to deliver "the goods" – marijuana. [Ly App 224, 806, 859] Furthermore, Bui's testimony established Ly's direct relationship with Son Ngo, the head of the conspiracy, in arranging the delivery of marijuana. The evidence also established Ly possessed $54,000 in cash after a meeting with Son Ngo in Philadelphia. Thus, the evidence supported his conspiracy conviction.

B

Ly contends in the alternative there was a variance between the single conspiracy charged in the indictment and the evidence introduced at trial proving three conspiracies, and that was prejudicial. We will vacate a conviction "when (1) there is a variance between the indictment and the proof presented at trial and (2) the variance prejudices a substantial right of the defendant." *United States v. Kelly*, 892 F.2d 255, 258 (3d Cir. 1989). Ly argues he was prejudiced because the jury heard extensive evidence about drug sales in which he was not involved.

To distinguish between single and multiple conspiracies, we generally consider three factors: (1) whether the conspirators shared a common goal; (2) whether the agreement "contemplated bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators;" and (3) "the extent to which the participants overlap in the various dealings." *Kelly*, 892 F.2d at 259 (internal citations and quotations omitted). But while the *Kelly* factors are useful to demonstrate the existence of a single conspiracy, "the absence of one factor does not necessarily defeat an inference of the existence of a single conspiracy." *United States v. Padilla*, 982 F.2d 110, 115 (3d Cir. 1992). Whether there is a single conspiracy or multiple conspiracies is a fact question entrusted to the jury and which we will sustain if there is substantial evidence to support the jury's determination. *United States v. Perez*, 280 F.3d 318, 345 (3d Cir. 2002).

To evaluate whether the defendants shared a common goal, we look to the underlying purpose of the alleged criminal activity. *See Kelly*, 892 F.2d at 259. Here, the

7

co-conspirators' common goal was to make money selling controlled substances through a coordinated effort organized by "the Company's" head, Son Ngo.

Whether the conspirators' agreement sought to accomplish a continuous result that would not persist without the continuous cooperation of the conspirators is satisfied where "the record evidence supports a finding that the activities of others were necessary or advantageous to the success of another aspect of the scheme or to the overall success of the venture." *United States v. Salmon*, 944 F.2d 1106, 1117 (3d Cir. 1991) (internal quotations omitted). Ly argues there was no continuous cooperation or results intended because the operations began before his sales and continued after his participation ended. But the evidence at trial established Ly's essential role in the conspiracy. He was responsible for growing the marijuana for supply, distribution, and sale. He used his home as a "grow house". And, he was responsible for transporting money from Philadelphia to Pittsburgh.

As for the extent to which participants overlap in the various dealings, it is not necessary for the government to prove "each defendant knew all the details, goals, or other participants in order to find a single conspiracy." *Kelly*, 892 F.2d at 260 (internal quotations omitted). Here, there is significant overlap between the participants. Ly acknowledges his dealings with Son Ngo and Khanh Bui. There was also testimony at trial Ly met with other co-conspirators at a Philadelphia restaurant and was regularly present at "the Company's" headquarters.

Because the evidence presented at trial satisfied the *Kelly* factors in order to prove a single conspiracy, we find no variance and need not address Ly's prejudice argument.

8

C

Ly contends the court erred in denying his motion to suppress evidence seized during an investigatory car stop on August 9, 2007 because the officer lacked reasonable suspicion to stop his vehicle. We review under a mixed standard, in which we review findings of fact for clear error and exercise plenary review over legal conclusions. *See United States v. Tracey*, 597 F.3d 140, 146 (3d Cir. 2010).

We have held a "traffic stop will be deemed a reasonable seizure when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop." *United States v. Delfin-Colina*, 464 F.3d 392, 398 (3d Cir. 2006) (internal quotations omitted). Here, the District Court found the perimeter of the license plate was obscured in violation of 75 Pa. Cons. Stat. § 1332(b)(3) and the registration sticker was located in the wrong place in violation of 67 Pa. Code § 47.4(c) and therefore the traffic stop was legal. We agree.

The court found as fact that the registration plate was obstructed around the outermost portion of the tag, making the top portion of the tag difficult to read, and the validation sticker was not affixed to the proper space. We see no clear error. Credibility findings are entitled to deference. Here, the court found the trooper credible and his recollection supported by his notes. Ly points to nothing to undermine the court's credibility finding.

Because affixing a registration sticker to the incorrect section of the license plate violates 67 Pa. Code § 47.4 and the perimeter of the license plate was obscured in

9

violation of 75 Pa. Cons. Stat. § 1332(b)(3), the officer had reasonable suspicion to conduct the traffic stop.

D

Ly also contends the court's sentence is unreasonable because it failed to meaningfully consider and apply all of the relevant 18 U.S.C. §3553(a) sentencing factors in sentencing him at the high end of the advisory guideline range.[2]

We evaluate a sentence by reviewing the court's record considering the relevant factors in §3553(a). *United States v. King*, 454 F.3d 187, 194 (3d Cir. 2006). The sentencing judge does not have to comment on every factor if "the record makes clear the court took the factors into account in sentencing." *United States v. Howe*, 543 F.3d 128, 137 (3d Cir. 2008). We are satisfied the court adequately considered and weighed the §3553(a) factors.

The court carefully considered the §3553(a) factors and explained its sentence. Ly claims the court failed to give meaningful consideration to relevant mitigating factors, specifically his lack of a criminal record, his two disabled dependent children, and also contending he did not pose a serious risk of recidivism. Despite Ly's arguments, the court reasonably considered Ly's lack of a criminal record and his situation with his

---

[2] We "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 51 (2007). "The touchstone of reasonableness is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007). We are deferential to the district court's application of these factors and "will affirm [the sentence] unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the District Court provided." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc).

dependent children, even rescheduling the sentencing hearing for 30 days in order to evaluate the effect the sentence would have on his children. The court's sentence was substantively and procedurally reasonable.

## III

Ha Ngo contends the evidence was insufficient to establish he was a member of "the Company's" marijuana distribution conspiracy and the related substantive offenses.

## A

With respect to the conspiracy conviction, "we must determine if the evidence at trial would have allowed a reasonable juror to conclude beyond a reasonable doubt that the defendants 'shared a unity of purpose, [or] the intent to achieve a common goal and an agreement to work together toward the goal.'" *United States v. Applewhaite,* 195 F.3d 679, 684 (3d Cir. 1999) (quoting *United States v. Wexler,* 838 F.2d 88, 90–91 (3d Cir. 1988)) (alteration in original). The government may prove these elements entirely by circumstantial evidence. *United States v. Gibbs,* 190 F.3d 188, 197 (3d Cir. 1999).

The evidence supports Ngo was part of a conspiracy to distribute marijuana. The government presented testimony from Khanh Bui establishing Ha Ngo's role in his brother Son Ngo's organization. Bui testified Son directed him to Ha's house to pick up "merchandise," which he stated was marijuana. [Ngo App 575] Bui also testified Son's girlfriend provided Ha's phone number so he could contact Ha to coordinate "business." [App 571-72] The government provided intercepted telephone conversation transcripts to corroborate the witness's statements. The testimony at trial, coupled with the transcripts

of the intercepted telephone conversations, was sufficient to allow a jury to reasonably conclude Ha Ngo was an active participant in the conspiracy.

B

Ngo's claim there was insufficient evidence to convict him of possession of marijuana also fails. Reviewing the "totality of the evidence, both direct and circumstantial," *United States v. Sparrow*, 371 F.3d 851, 852 (3d Cir. 2004), the evidence was sufficient to convict Ngo.

Ngo argues Bui's testimony was so general and lacking in detail that it was insufficient to establish he knew the box placed in his trunk contained marijuana. But the evidence demonstrated Ngo's regular presence at "the Company's" headquarters and his connection to two known grow houses. The government presented intercepted telephone conversations between Son Ngo and Ha Ngo establishing Ha's role in the distribution of marijuana. Bui also testified that he arrived at Ha's home on one occasion to pick up marijuana and during a phone conversation Ha told his brother Son, "I am working right now." The direct and circumstantial evidence was sufficient to allow the jury to conclude Ha knowingly possessed marijuana and was engaged in drug trafficking. Thus, there was sufficient evidence for a rational jury to conclude Ngo had possession with the intent to distribute marijuana.

C

Ha Ngo also contends the government presented insufficient evidence that he maintained 204 Tulip Hill Road to store marijuana. Although Ha Ngo stipulated he

12

owned the home, he asserts he did not exercise the significant supervisory control required to "maintain" a storage facility.

We consider both the direct and circumstantial evidence and make all reasonable inferences in the light most favorable to the government. Here, the government presented evidence Sy Do was Ha's brother-in-law and resided at the address in a caretaker role. The government's expert witness explained a caretaker is typically a young male who lives at the house for compensation to water the owner's marijuana plants. Furthermore, intercepted telephone conversations with Son Ngo established Ha's ability to provide marijuana for future distribution. Based on this evidence, the jury could reasonably conclude Ha maintained the house as a storage facility to distribute marijuana.

IV

A

Chi Cuong Hoang contends the warrant authorizing electronic surveillance of his cell phone was invalid because it was obtained under an expired Attorney General authorization order. The government concedes the application recited Attorney General's designation order as Order No. 2758-2005 which expired on July 4, 2007. But, the Attorney General signed a new order, Order No. 2887-2007 on July 3, 2007 in which the assistant who signed the order was designated as an authorized signatory by the Attorney General. The court denied the motion to suppress because 18 U.S.C. § 2518 requires the authorizing official be identified – which she was – and that she be designated by the Attorney General as a valid signatory – which she was. The court held there is no

13

requirement the application must include a reference to the Attorney General authorization order. We agree.

Title 18 U.S.C. § 2518(10)(a)(1) permits a defendant to challenge electronically obtained evidence if "the communication was unlawfully intercepted." Despite the incorrect referenced authorization order, we conclude the court correctly denied the motion to suppress. We have held "suppression will not be required where there was substantial compliance with the statute." *United States v. Traitz*, 871 F.2d 368, 379 (3d Cir. 1989). The officers' reference to an outdated Attorney General Order was merely a technical defect which did not undermine the primary purposes of the wiretap statute's authorization requirement. Accordingly, the court correctly refused to suppress the wiretap evidence on this basis.

B

Hoang also contends the jury instructions failed to adequately charge all the elements of distribution of MDMA (ecstasy). In the absence of an objection to a jury instruction, we review for plain error. *United States v. Dobson*, 419 F.3d 231, 236 (3d Cir. 2005). Under the plain error standard, an appellate court may correct an error not raised at trial if it finds (1) an error, (2) that is plain, (3) affecting a substantial right, and (4) if, in its discretion, "the error seriously affects the fairness, integrity, or public reputation of [the] judicial proceedings." *Id.* (alteration in original). Hoang's claim of plain error centers on the alleged failure of the court to properly charge the jury on the elements of conspiracy to distribute MDMA. He claims the court charged the jury only on the agreement element of conspiracy, not the elements of distribution of MDMA or

14

possession with intent to distribute MDMA. The court did not err. The instructions with respect to the offense of possession with intent to distribute reference a "controlled substance" and adequately convey the elements of the offense.

Even assuming plain error, the omission could not have affected Hoang's substantial rights since the court instructed the jury that in order to convict, the jury must find Hoang trafficked specifically in MDMA. The verdict form demonstrates the jury found Mr. Hoang guilty of conspiracy to distribute MDMA specifically. We see no error or prejudice.

V

For the foregoing reasons, we will affirm the judgments of conviction and sentence of Nam Ly, Ha Ngo, and Chi Cuong Hoang.